IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ED & F MAN BIOFUELS LTD.,     §
    §
         Plaintiff,     §
    §
VS.     §   CIVIL ACTION H-08-3406
    §    ADMIRALTY RULE 9(h)
MV FASE, her engines, tackle,   §
appurtenances, etc., In re, and  §
CARDIFF, INC., in personam,   §
    §
         Defendants.   §

## OPINION AND ORDER

Pending before the Court in the above referenced cause, in which various parties are asserting claims to proceeds of or cargo aboard the M/V FASE following its arrest and sale at a U.S. Marshal's auction on May 5, 2009, is Clariant Corp. and Clariant International, Ltd.'s (collectively "Clariant's") motion to dismiss Intervenor-Plaintiffs Manufacturers and Traders Trust Company ("M&T Trust"), BFC Assets, Inc., and Landesbank Hessen-Thuringen Girozentrale's (collectively, "the Banks'") Cross-Claim (instrument # 152).

After carefully reviewing the parties' submissions and the applicable law, the Court concludes that the motion should be granted in part and denied in part for reasons stated in this opinion and order.

### The Banks' Cross-Claim Against Clariant

The Banks' first amended Cross-Claim, #149 at 13-17, filed on December 17, 2009, states that Plaintiff ED&F Man Biofuels Ltd. ("ED&F") arrested a vessel, the M/V FASE, on November 17, 2008 in Houston, Texas when it was loaded with a chemical cargo, Hostatpur SAS 60, owned by Clariant, on its way from the Netherlands to New Orleans, Louisiana, where Clariant had contracted to accept the cargo in good condition.  ED&F subsequently dismissed its claim, but, along with other intervening creditors, the Banks intervened to assert a preferred ship mortgage lien and claim that they were entitled to recover the amount of the lien from the proceeds of the sale of the vessel; Clariant intervened to assert claims related to the cargo.

According to the Banks' Cross-Claim, the vessel had to be sold as soon as practical to avoid significant and continuing costs of keeping it under arrest and of bunkers for heating the cargo while it remained on board.[1]  Clariant initially objected to any proposed sale unless the vessel was sold with the cargo still on board and the new owner agreed to either carry the cargo to Clariant's facility in New Orleans or take possession of the vessel in New Orleans after the cargo was discharged there.  The other claimants were willing to agree to these conditions if Clariant would

---

[1] According to the Banks, Cargo argued that because of the physical and chemical characteristics of the cargo, it could not be offloaded from the vessel into trucks, barges or a shore tank while the vessel remained under arrest in the Port of Houston.

withdraw its opposition to the sale.  Before the parties sought an order from the court, however, Clariant advised them that the cargo had gone "off spec," that Clariant was rejecting it, that Clairiant no longer sought to impose conditions on the sale, and that the insurers of the cargo were seeking a buyer who would take it off the vessel.  The parties then sought and obtained a court order (#72), signed on April 6, 2009, for a sale of the vessel on April 21, 2009.

Nevertheless, as the sale date approached, the cargo still remained on board the vessel.  Clariant then announced that if it could not find a buyer for the cargo, it intended to abandon the cargo onboard the vessel and that the Bank claimants would be responsible not only for removing it, but for paying potentially substantial costs to dispose of it.  Objecting, M&T Trust filed an emergency motion to compel discharge (#82), requesting an order directing Clariant to discharge the cargo and accept it.  On May 4, 2010, United States Magistrate Judge Frances Stacy, noting that all the parties agreed that the vessel would be worth more at sale if the cargo was removed prior to sale, ordered Clariant to remove the cargo, and determined that the discharge costs were proper *custodia legis* expenses, but the subsequent transport, storage, and disposal costs were not (#101) and must be borne by Clariant.  By agreement and court order, the vessel was sold to the Banks on May 5, 2009 at public auction by the U.S. Marshal.  Clariant arranged for the

discharge of its cargo at its New Orleans facility; the Banks claim that action demonstrates that Clariant always had an obligation and a means to remove the cargo in a timely manner.

Furthermore, according to the Banks' Cross-Claim, an analysis of the cargo taken before it was loaded onto the vessel in Europe showed that the cargo was "off spec" at that time because of an unacceptably high iron content.[2] The Banks charge Clariant with causing an unnecessary three-month delay in the sale of the vessel and expenses to all parties in the litigation by allowing its contaminated cargo to be loaded onto the vessel and, after the arrest of the vessel in Houston, by refusing to accept its cargo. During the dispute M&T Trust had to pay the fees and expenses of the substitute custodian and other substantial costs and fees.

The Banks' Cross-Claim against Clariant asserts four causes of action:  (1) tortious interference with contract (the preferred ship mortgage held by M&T Trust, a contract that allows M&T Trust to foreclose on the vessel which secured the *in personam* Defendants' obligations); (2) trespass to chattel, based on M&T Trust's preferred ship mortgage and maritime lien giving it a legally protected interest in the vessel; (3) negligent misrepresentation, based on Clariant's misrepresentations to M&T Trust, during the effort to sell the vessel, that the cargo was not

_____

[2] Clariant maintains the cargo was damaged en route to the United States.

"off spec" when it was loaded onto the vessel in Europe and that Clariant could not accept the cargo into its dedicated tank in New Orleans or otherwise timely effect the discharge of the cargo; and (4) "equitable relief" from damages caused by negligent, reckless, or intentional loading of "off spec" cargo onto the vessel and failure to remove it when Clariant had a legal duty to do so.

### Standard of Review Under Fed. R. Civ. P. 12(b)(6)

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff, in this case the Cross-claim in favor of the Banks, and take all well-pleaded facts as true. *Kane Enterprises v. MacGregor (US), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003), *citing Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). As the Banks point out, when a motion to dismiss contains factual allegations that contradict the pleading under attack, the Court may not use those counter-allegations to grant the motion to dismiss. *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual

allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).

Recently, in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009)(5-4), the Supreme Court, applying the *Twombly* plausibility standard to a *Bivens* claim of unconstitutional discrimination and a defense of qualified immunity for government official, observed that two principles inform the *Twombly* opinion: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." . . .  Rule 8

"does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Furthermore, the plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

In addition to the complaint, the court may review documents attached to the complaint and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s). *Collins*, 224 F.3d at 498-99.

The court may also take notice of matters of public record when considering a Rule 12(b)(6) motion. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint "for failure to state a claim upon which relief can be granted." Dismissal under the rule is "appropriate when a

defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.

-8-

[citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its fact . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

### Relevant Law

The elements of a claim for tortious interference, which is brought by a party (here, the Banks) to a contract (here, the preferred ship mortgage lien) against a third-person stranger to the contract (here, Clariant) are (1) the existence of a contract subject to interference; (2) willful and intentional interference by the third party; (3) interference that proximately caused the damage; and (4) actual damage or loss.  *Holloway v. Skinner*, 898 S.W. 2d 793, 794-95 (Tex. 1995); *WTG Gas Processing, LP v. ConocoPhillips Co.*, 309 S.W. 3d 635, 652 (Tex. App.--Houston [14th Dist.] 2010), *citing Powell Indus., Inc. v. Allen*, 985 S.W. 2d 455, 456 (Tex. 1998).

A trespass to chattels is a wrongful interference with or injury to property that causes actual damage to the property or deprives the owner of its use for a substantial period of time. *Omnibus Int'l. Inc. v. AT&T, Inc.*, 111 S.W. 3d 818, 826 (Tex. App.--Dallas 2003, pet. granted, remanded by agreement); *Zapata v. Ford Motor Credit Co.*, 615 S.W. 2d 198, 201 (Tex. 1981).  Trespass to chattel is distinguished from conversion in Texas:  "Texas

classifies an interference with a chattel that 'compels the defendants to pay the full value of the thing with which he has interfered' as conversion; but, if the interference with chattel does not require the defendant to pay full value, it 'may constitute trespass to chattels.'" *Omnibus*, 111 S.W. 3d at 826, *quoting Prosser & Keeton on Torts* § 14, at 85-86 (5th ed. 1984).

To prevail on a claim for negligent misrepresentation, a plaintiff must prove (1) the representation was made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the misrepresentation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W. 2d 787, 791 (Tex. 1999), *citing Restatement (Second) of Torts* § 552; *Fed. Land Bank Ass'n v. Sloane*, 825 S.W. 2d 439, 442 (Tex. 1991). The plaintiff must also demonstrate that the defendant misrepresented an existing fact rather than the promise of future conduct. *Sloane*, 825 S.W. 2d at 442.

It is well settled rule that a party may not justifiably rely on an opposing attorney's statements made in an adversarial setting, including litigation. *Valls v. Johanson & Fairless, LLP*,

__ S.W. 3d ___, No. 14-08-00449-CV, 2010 WL 2195446, *7 (Tex. App.--Houston [14th Dis.] June 3, 2010), *citing McCamish*, 991 S.W. 2d at 794, and *Ortiz v. Collins*, 203 S.W. 3d 414, 422 (Tex. App.--Houston [14th Dist.] 2006, no pet.)(holding that a party to an arms-length transaction must protect his own interests and cannot excuse his failure to do so on "mere confidence in the honesty and integrity of the other party").  The purpose behind the rule is "to allow an attorney to fulfill his duty and zealously represent his clients without subjecting himself to the threat of liability. . . . An attorney who could be held liable for statements made or actions taken in the course of representing his client would be forced constantly to balance his own potential exposure against his client's interest. [internal citations omitted]" *Dixon Financial Services, Ltd. v. Greenberg, Peden, Siegmyer & Oshman, PC*. No. 01-06-00696-CV, 2008 WL 746548, *7 (Tex. App.--Houston [1st Dist.] Mar. 20, 2008)("To promote zealous representation, courts have held that an attorney has 'qualified immunity' from civil liability, with respect to nonclients, for actions taken in connection with representing a client in litigation.").  That qualified immunity applies regardless of whether the conduct is wrongful for purposes of the underlying lawsuit.  *Id.*

The court may decide issues of justifiable reliance as a matter of law. *Valls*,   2010 WL 2195446, at *8, *citing Ortiz*, 203 S.W. 3d  at 422 ("We hold that as a matter of law, the parties'

-11-

relationship remained adversarial, and thus any reliance by Ortiz on statements made by appellees during the negotiation process was unjustified and unreasonable."); *Chapman Children's Trust v. Porter & Hedges, LLP*, 32 S.W. 3d 429, 443 (Tex. App.--Houston [14th Dist.] 2000, pet. denied)(affirming summary judgment because party was not justified in relying on opposing counsel's representations "given the adversarial nature of the parties' relationship").

"'Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel. The falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case.'" *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W. 2d 909, 912 (1942); *Jenevein v. Friedman*, 114 S.W. 3d 743, 745 (Tex. App.--Dallas 2003). The litigation privilege "'extends to any statement made by the judge, jurors, counsel, parties or witnesses and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of th pleadings or other papers in the case.'" *Jenevein*, 114 S.W. 3d at 745, *quoting James v. Brown*, 637 S.W. 2d 914, 917-18 (Tex. 1982). The privilege is one of public policy "founded on the theory that the good it accomplishes in protecting the rights of the general public

outweighs any wrong or injury which may result to a particular individual." *Reagan*, 166 S.W. 2d at 913.  The absolute privilege for judicial proceedings is also based on a public policy that "the administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation." *Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, LLP*, 291 S.W. 3d 448, 451 (Tex. App.--Forth Worth 2009), *citing James v. Brown*, 637 S.W. 2d at 916, and *5-State Helicopters, Inc. v. Cox,* 146 S.W. 3d 254, 257 (Tex. App.--Fort Worth 2004, pet. denied).  For the privilege to apply, the governmental entity must have the power and authority to investigate and decide the issue, and the communication must bear some relationship to the pending or proposed quasi-judicial proceeding.  *Perdue, Brackett,* 291 S.W. 3d at 452; *Jenevein*, 114 S.W. 3d at 746.

In the context of tortious interference claims, as opposed to those for libel and slander, "the privilege does not deny the interference, but rather seeks to avoid liability based upon a claimed interest that is being impaired or destroyed by the plaintiff's contract.  Such defenses, which constitute a confession and avoidance, are affirmative in nature." *Sterner v. Marathon Oil Co.*, 767 S.W. 2d 686, 690 (Tex. 1989), citing Tex. R. Civ. P. 94. The Texas Supreme Court concluded that "the privilege of legal justification or excuse in the interference of contractual relations is an affirmative defense upon which the defendant has

the burden of proof." *Id.   See also Southwestern Bell Tel. Co. v. John Carlo Texas,Inc.*, 843 S.W. 2d 470, 471 (Tex. 1992), *citing Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W. 2d 80, 91 (Tex. 1976)("Interference with contractual relations is privileged where it results from the exercise of a party's own rights or where the party possesses an equal of superior interest to that of the plaintiff in the subject matter."); *in accord Victoria Bank & Trust Co. v. Brady*, 811 S.W. 2d 931, 939 (Tex. 1991), and *Sterner*, 767 S.W. 2d at 691.  *See also DBI Services, Inc. v. Amerada Hess Corp.*, 907 F.2d 506, 508 (5th Cir. 1990)("Under [an affirmative defense to a claim for tortious interference], a party is privileged to interfere with another's contract if (1) it is done in a bona fide exercise of his own rights, or (2) he has an equal or superior right in the subject matter to that of the other party."), *citing Sterner*,767 S.W. 2d at 690.

The Texas Supreme Court has spoken of a "cause of action" for unjust enrichment and still refers to "claims for unjust enrichment." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W. 3d 671, 683-85 (Tex. 2000); *HECI Exploration Co. v. Neel*, 982 S.W. 2d 881, 885 (Tex. 1998)(holding that the two-year statute of limitations under Tex. Civ. Prac. & Rem. Code § 16.003 applies to unjust enrichment claims); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W. 3d 869, 869-70 (Tex. 2007)(reaffirming that unjust enrichment claims are governed by a two-year statute of

limitations).  Nevertheless, the courts in the Fifth Circuit and a number of Texas courts in examining the case law have concluded that rather than an independent cause of action, it is a "theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received." *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560-61 (N.D. Tex. 2009)(and cases cited and discussed therein.).[3]  As summarized in a much quoted opinion, *Burlington Northern Railroad Co. v. Southwestern Electric Power Co.*, 925 S.W. 2d 92, 96-97 (Tex. App.--Texarkana 1996),

> The doctrine of unjust enrichment belongs to the measure of damages known as quasi-contract or restitution. *LaChance v. Hollenbeck*, 695 S.W. 2d 618, 620 (Tex. App.--Austin 1985, writ ref'd n.r.e.); *see also* 1 Arthur L. Corbin, Corbin on Contracts § 1.20 (rev. ed. 1993); 5 Arthur L. Corbin, Corbin On Contracts §§ 1102, 1104 (1964); 42 C.J.S. *Implied and Constructive Contracts* §§ 4-6 (1991); *cf. Ferrous Prods. Co. v. Gulf States Trading Co.*, 323 S.W. 2d 292, 296-97 (Tex. App.--Houston 1959), *aff'd*, 160 Tex. 399, 332 S.W. 2d 310 (1960).  The purpose of restitution is to place an aggrieved plaintiff in the position he occupied prior to his dealings with the defendant.  42 C.J.S. *Implied and Constructive Contracts* § 6; 5 Corbin § 1102.  This purpose is accomplished by requiring the defendant to return to the plaintiff any rendered performance to which the defendant

---

[3] As the court in *Mowbry v. Avery*, 76 S.W. 3d 663, 680 n. 25 (Tex. App.--Corpus Christi 2002, pet. denied), wrote, "'Although the court in *HECI* refers to 'the cause of action' of unjust enrichment, it also refers to unjust enrichment as a 'remedy,' 'basis for recovery' and speaks of a 'cause of action *based on* 'unjust enrichment.  We do not see these statements as recognition of unjust enrichment as an independent cause of action but simply as a reiteration of the well establish principle that a suit for restitution may be raised against a party based on the theory of unjust enrichment.'" *Hancock*, 635 F. Supp. 2d at 561.

is not entitled.  5 Corbin § 1102.

    The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties.  *See Lonestar Steel Co. v. Scott*, 759 S.W. 144, 154 (Tex. App.--Texarkana 1988, writ denied).  When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff. *Barrett v. Ferrell*, 550 S.W. 2d 138, 143 (Tex. Civ. App.-Tyler 1977, writ ref'd n.r.e.); 42 C.J.S. *Implied and Constructive Contracts* § 5. Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress or the taking of undue advantage. *Heldensfels Bros., Inc. v. City of Corpus Christi*, 832 S.W. 2d 39, 41 (Tex. 1992). . . .

    A remedy such as unjust enrichment that is based on quasi-contract or a contract implied in law is unavailable when a valid, express contract governing the subject matter of the dispute exists.  *Woodard v. Southwest States, Inc.*, 384 S.W. 2d 674, 675 (Tex. 1964) . . . .

The pleading of unjust enrichment is sufficient if it gives fair and adequate notice of the facts on which the claim is based and enables the opposing party to prepare a defense, i.e., "whether an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant." *Roark v. Allen*, 633 S.W. 2d 804, 810 (Tex. 1982); *State Fid. Mortgage Co. v. Varner*, 740 S.W. 2d 477, 479 (Tex. App.--Houston [1st Dist.] 1987, writ denied).

### Clariant's Motion to Dismiss (#152)

Clariant moves to dismiss the Cross-Claim pursuant to Federal

-16-

Rules of Civil Procedure 12(b)(6), 12(c), 12(d) and/or 12(h)(2).[4]

Clariant represents that the M/V FASE was in a state of financial unseaworthiness before it left the Netherlands and had defaulted on several mortgages held by the Banks, which knew the vessel would likely be arrested before it set sail on August 7, 2008, but let it go anyway.  Clariant argues that the impediments to discharge of the cargo, which occurred during the pendency of this litigation, would not have existed if the vessel had not been arrested.  Clariant maintains that the Banks did not notify Clariant that the vessel was financially unseaworthy or that they intended to arrest the vessel themselves when it arrived in Louisiana, arrange for a court-ordered sale, and then purchase the [v]essel at a discount.  Nevertheless Plaintiff ED&F arrested it in Houston, with the cargo still aboard, so the Banks and Clariant intervened in this action to assert their interests.  All parties

---

[4] Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."

Rule 12(c) states, "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

Rule 12(d) states, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Rule 12(h)(2) provides, "Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim must be raised:  (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.

agreed that it would be difficult to sell the vessel to a third party without discharging the cargo first.

Clariant maintains that the Cross-Claim filed by the Banks, alleging that Clariant lied to the Court and to the Banks, obstructed the sale of the vessel, and delayed discharge of the cargo, is frivolous.  It insists that it worked in good faith and diligently to arrange for the discharge in Houston and that the Banks were involved, as reflected in emails attached to Clariant's motion, and in numerous phone calls.  Clariant insists that no one had a feasible suggestion to discharge the cargo in Houston.  The parties appeared before the Magistrate Judge a number of times to discuss the problems.  Clariant points out that on April 15, 2009 the Banks drafted and filed an agreed motion to delay the sale of the vessel so the parties could have more time to resolve the cargo problem.  Moreover Clariant updated the Banks a number of times on its attempts to find a buyer to discharge the cargo.  The Magistrate Judge entered an order resolving the contested issue of which expenses incurred post-arrest would be deemed *custodia legis* and which not (#101).  Clariant filed an emergency motion for a status conference (#102) on the day the vessel was sold, but the Magistrate Judge denied it (#106) the day after the boat was sold. On May 8, Clariant filed an emergency motion for modification of the Magistrate Judge's order (#108) and again requested an emergency hearing, but the Court confirmed the sale of the vessel

that same day (#109).  The Banks meanwhile had purchased the vessel
in full knowledge that the cargo was aboard, and they conceded in
writing that "typically it is the carrier's duty to discharge the
[c]argo."  When no response came from the Magistrate Judge to
Clariant's last emergency motion, because of the statutory
deadline, on May 13 Clariant filed objections to the Magistrate's
order (#112) with the District Court and requested an emergency
stay of the order.  On May 14, the Magistrate Judge denied the
motion for an emergency hearing (#114), but ordered that Clariant
had until May 26 to arrange for discharge of the cargo.  On May 17,
without asking for the Court's approval, the Banks ordered the
vessel to leave Houston and pick up new cargo in Louisiana.
Although Clariant believed that the Magistrate Judge's order (#101)
was wrong on the merits and void because of the vessel's
unauthorized departure, in good faith and to mitigate costs
Clariant agreed to accept the contaminated cargo at its Louisiana
facility.  Therefore on May 21 Clariant withdrew its request for an
emergency stay (#117), but repeated its objections and contention
that the order was void.

Before the vessel reached Louisiana, Clariant found a salvage
buyer who agreed to pick up the cargo at Clariant's New Orleans
facility; Clariant immediately informed the Banks.  The Banks on
May 28 filed a sur-reply (#121) to Clariant's objections arguing
that the objections were moot because the vessel had reached New

Orleans, the cargo had been discharged into Clariant's tank, and a third party had signed a contract to purchase the cargo "as is, where is."  The salvage buyer completed the discharge process on or about June 26.  On June 30 Clariant withdrew its objections to the Magistrate Judge's discharge order (#125).

Clariant represents that several months later the Banks first informed it that the discharge dispute was not moot and sued Clariant for intervening in the sale of the vessel, refusing to discharge the cargo, and lying about the condition of the cargo. The Cross-Claim is based on Clariant's purported failure to timely discharge the cargo even though the Banks ordered the vessel to leave Houston before the discharge deadline elapsed and despite the fact that the Banks knew that there was no viable means to discharge it in Houston.  Clariant also contends that the damages the Banks seek, i.e., costs associated with maintaining the vessel while it was under arrest, were long ago reimbursed to them as *custodia legis* expenses.

Clariant asserts that the Banks' two causes of action for tortious interference with contract and trespass to chattel, fail because they are based on  an allegation that Clariant left the cargo on the vessel when Clairant had no right to do so.  Clariant insists it had no duty to discharge the cargo, much less discharge it in Houston.  For their tortious interference claim, the Banks must prove that Clariant committed an underlying tort or wrongful

act.  *Allied Capital Corp. v. Cravens*, 67 S.W.3d 486, 491 (Tex.
App.--Corpus Christi 2001, no pet.).  For their trespass to chattel
cause of action, the Banks must demonstrate that Clariant committed
a wrongful act that interfered with the Banks' right to possess the
vessel.  Even if the Banks' factual allegations are correct, the
Banks have failed to plead a viable underlying tort or wrongful act
under Texas law for either claim, contends Clariant.  While the
Banks assert that Clariant wrongfully delayed discharging the cargo
in Houston, under black letter federal law, and as the Banks
admitted in open court, Clariant had no duty to discharge the cargo
any time, and certainly not after the cargo had been ruined and
arrested at a foreign facility hundreds of miles from its
destination.  The duty to discharge cargo belongs to the vessel and
its owners.  *Francexpa Milltrade Intern., S.A. v. M/V KIELGRACHT,*
No. H-94-4252, 1996 WL 931822, *2 (S.D. Tex. Apr. 23, 1996).  Where
the vessel fails to reach its final destination, the vessel and its
owner have a duty to pay expenses arising from forced discharge.
*Hellenic Lines, Ltd. v. U.S.A. Commodity Credit Corp.*, 1972 A.M.C.
1716, 1733 (S.D.N.Y. 1972)(The effect of the rule that freight is
not earned unless and until the goods are delivered to their
destination "is to give the shipper several options upon the
failure of the carrier to deliver his cargo to its destination.
Since no freight is due, the shipper may transship the goods at his
expense in which case it need pay no freight to the carrier.

Alternatively, the shipper may require the carrier to forward his cargo at the carrier's expense, in which case the carrier becomes entitled to full freight upon the ultimate delivery. 'And it is perfectly settled, that if the shipper voluntarily accepts the goods . . . at any intermediate port, such acceptance terminates the voyage and all responsibility of the carrier. . . . [internal citations omitted]"), *rev'd in part on other grounds and aff'd in part*, 512 F.2d 1196 (2d Cir. 1975).  The consignee has no duty to receive cargo until it is discharged at the contracted-for location, Clariant insists.

Clariant argues that the trespass to chattel cause of action also fails because the alleged trespass predates the Banks' right to possess the vessel.  To prevail on its claims the Banks must prove that they had a right to possess the vessel and that Clariant's wrongful act(s) deprived the Banks of their possessory right for a substantial period of time.  *Armstrong v. Benavides*, 180 S.W. 3d 359, 363 (Tex. App.--Dallas, no pet.).  Here the Banks obtained a right to possess the vessel only after the Court confirmed the sale and released the vessel from arrest.  *Latvian Shipping Co. v. Baltic Shipping Co.*, 99 F.3d 680, 692 (5ᵗʰ Cir. 1996); *Dynamic Marine Consortium, S.A. v. M/V Latini*, 120 F. Supp. 595, 606 (E.D. La. 1999)("There is no sale at a judicial auction in admiralty unless and until the Court accepts the bid by confirming order.").  As noted the Court confirmed the sale here on May 8,

2009.  The "trespass" by Clariant's alleged delay in removing the cargo and the diminution of the value of the vessel when it was sold occurred before the sale.  Furthermore, because the Banks left Houston before the vessel was released from arrest and before the Magistrate's deadline to remove the cargo had elapsed, the Banks cannot prove that they were deprived of their possessory right for "a substantial period of time." *Armstrong*, 180 S.W. 3d at 363.

Clariant maintains that dismissal of the Banks' claim of negligent misrepresentation is required because the alleged misrepresentations by Clariant's counsel were made during hearings before the Magistrate Judge in this lawsuit, i.e., during adversarial proceedings, and therefore cannot be relied upon as a matter of law. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W. 2d 787, 794 (Tex. 1999)("Generally courts acknowledge that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context.").

The last claim for equitable relief, insists Clariant, is not a viable cause of action, but a remedy. *U.S. v. Smelser*, 87 F.2d 799, 801 (5th Cir. 1937)(causes of action precede and give rise to remedies, "but they are separate and distinct.").

### Banks' Response (# 156)

The Banks insist that had Clariant accepted discharge of the cargo in a timely manner or agreed to the sale of the vessel when

its agreement was first sought in January 2009, the vessel could have been sold in mid-February at the latest. Moreover, if Clariant had not loaded an "off-spec" cargo onto the vessel originally, all the delay could have been avoided and the vessel sold in early February 2009, after ED&F's cargo was removed from the vessel on February 1. Clariant did neither, causing a three-month delay until Clariant was ordered by the Court to remove its cargo.

The Banks further respond that while the costs that the Banks incurred in maintaining the vessel during her arrest have ostensibly been reimbursed from the sale proceeds as *custodia legis* expenses, that reimbursement is nominal. The Banks have taken a default judgment against the *in personam* Defendants, whose debt to the Banks was secured by the vessel, in the amount of $30,751,571.91. Thus the sale proceeds were insufficient to satisfy this judgment. Any amount of sale proceeds remaining after all other claims against the proceeds have been satisfied would be for the Banks' account. The unnecessary expenses and costs which eroded the sale proceeds also eroded the Banks' total recovery.

The Banks assert that the preferred ship mortgage lien held by the Banks is a valid and enforceable contract between them and the *in personam* Defendants. The terms of that mortgage allow the Banks to foreclose on the vessel, which secured the *in personam* Defendants' obligations under the contract. The Banks further

charge that Clariant knew of the Banks' efforts to exercise their rights under the contract, but by leaving the cargo on board the vessel, it interfered with the Banks' ability to exercise their rights under that contract, proximately causing significant monetary damage to the Banks.   Furthermore, Clariant's willful failure to accept discharge of its cargo when it was legally obligated to do so proximately resulted in diminution of the value of the *res* and therefore interfered with the Banks' possessory rights in the vessel and/or the *res* resulting from the eventual judicial sale of the vessel.

The Banks point to two misrepresentations made by Clariant during the process of effecting the sale of the vessel:  (1) that the cargo was not "off spec" when it was loaded onto the vessel; and (2) that Clariant could not accept the cargo into its dedicated tank near New Orleans or otherwise effect the discharge of the cargo in a timely manner.   In making these representations, Clariant did not exercise reasonable care in determining whether the information was correct or it intentionally misled the Banks and other claimants to the vessel.

The Banks additionally argue that Clariant ignores the facial plausibility requirement, i.e., pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[5] and instead makes

---

[5] *Iqbal*, 129 S. Ct. at 1949.

an extended argument based on facts that are far beyond those pleaded by the Banks in the Cross-Claim.  Clariant tries to show that it should prevail on the merits, but it does not argue that the motion should be converted into a motion for summary judgment under Rules 12(d) and 56.   If it were a motion for summary judgment, it is premature, as the Banks were granted leave to file the Cross-Claim on December 17, 2009 (#148) and at the time it filed the instant motion, Clariant has not filed an answer to join the issues and discovery had not commenced.

In response to Clariant's assertion that it had no duty to discharge the cargo under federal law, the Banks point to the an allegation in their Cross-Claim (#149 at 14-15) regarding Magistrate Judge Stacy's order (#101):  "By granting M&T Trust's Motion to Compel, the Court in effect confirmed that Clariant had, all along, a duty to remove its Cargo from the Vessel."  Moreover the Banks accuse Clariant of attempting to confuse the physical discharge of the cargo (the cost of which was deemed to accrue for the benefit of all claimants and was thus a *custodia legis* expense) with Clariant's obligation to accept and dispose of the cargo once discharged (which the Court found to be solely Clariant's obligation despite Clariant's argument that it had no duty to accept the cargo and could abandon it).   And although Clariant originally made an objection to the order, it later withdrew that objection.  Letter to the Honorable Melinda Harmon, #125, June 30,

2009.  The Banks cite the law of the case doctrine ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states in the same case"). *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988).  They concede that the doctrine does not bar a district court from revisiting its own prior orders, *United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997), but urge that it does "direct the court's discretion."   *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 2009 WL 197739 at *9 (S.D. Tex. 2009).[6]   In sum, the Banks contend that to the extent that the tortious interference with contract and trespass to chattel causes of action depend on a duty of Clariant to arrange for the discharge of and accept the cargo, prior orders demonstrate these claims are facially valid and Clariant's argument has no merit.

---

[6] The Banks take this statement out of context and twist the court's application of the doctrine.  In *Suzlon*, the plaintiffs argued that the court should deny defendants' motion for leave to amend its answer and counterclaim because the court had previously denied a similar motion for the same relief and that denial was therefore the law of the case.  The court rejected that argument as "unpersuasive," and quoted *Arizona v. California*, 460 U.S. 605, 618 (1983)("Law of the case directs a court's discretion, it does not limit the tribunal's power.").  *Id.* at *9.  It further opined, "'[I]n civil cases a district court is not precluded by the . . . doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions, as those rulings are not immutable and lack *res judicata* effect.'"  *Id., quoting United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997).  The court therefore found the law of case doctrine to be inapplicable.  *Id.*

Moreover, maintain the Banks, they claimed that they had an interest in the chattel as a secured credit of the vessel long before the sale. *See* #149 at 3-8, ¶¶ 12-38; at 16, ¶ 78 ("Pursuant to the terms of M&T Trust's preferred ship mortgage and its maritime lien, M&T Trust had a legally protected interest in the Vessel. Clariant's willful failure to remove its Cargo when it was legally obligated to do so proximately resulted in a diminution in the value of the *res* and therefore interfered with the possessory rights of M&T Trust [as a lienholder] in the  Vessel itself and/or the *res* resulting from the eventual judicial sale of the Vessel."). The Banks disagree with Clariant's statement that they had no right to possess the vessel until the Court confirmed the sale; instead they contend that any party with a property interest in a damaged chattel has a possessory interest that can be vindicated by a claim for trespass to chattel, even if it did not have a direct right to possess the chattel at the time of the damage. *Great American Insurance Co. v. Nicholas*, 1989 WL 125350, *3 (D.N.J. 1989)("Plaintiffs' maritime tort claim constitutes a cause of action for trespass to chattel . . . . One who has a property interest in a chattel is in possession of it even if he is not exercising physical control over it at the time of trespass. The perpetrator of a trespass to chattel is liable for damage caused to it."), *citing Restatement (Second) of Torts*, § 216, comment c; § 218, comment on clause (b). *See also Armstrong v. Five Point*

-28-

*Federal Credit Union*, No. 09-07-263 CV, 2007 WL 5011554 (Tex. App.--Beaumont March 20, 2008, no pet.)(recognizing credit union's suit for trespass to chattel against third-party purchaser of truck because the credit union obtained a security interest in it when it lent money to the original buyer).  The Banks argue that they had a right to immediate possession of the vessel upon the default of the corporate Defendants, and thus have stated a claim for trespass to chattel.

Finally, with respect to Clariant's potential affirmative defense of litigation privilege to the Banks' cross-claim for negligent misrepresentation, the Banks maintain that the fact that an attorney made such a statement does not bar a claim for damages against the lawyer's client.  *Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W. 2d 838, 847 (Tex. App.--Houston [1ˢᵗ Dist. 1987, no writ)(holding that Hideca Petroleum, "as the supplier of information [that it would provide the necessary letter of credit] in the course of its business for the guidance of Tampimex in its business, owed a duty to Tampimex to exercise reasonable care in obtaining and communicating correct and reliable information, as well as a duty to perform competently its obligations assumed under the contract" for a sale of crude  oil).  *See also Susser Petroleum Co. v. Latina Oil Corp.*, 574 S.W. 2d 830, 832 (Tex. App.--Texarkana 1978, no writ)("When the information concerns a fact not known to the recipient, he is entitled to expect that the supplier will

-29-

exercise that care and competence in its ascertainment which the supplier's business or profession requires and which, therefore, the supplier professes to have by engaging in it.  Thus the recipient is entitled to expect that such investigations as are necessary will be carefully made and that his informant will have normal business or professional competence to form an intelligent judgment upon the data collected.").[7]  Moreover, point out the Banks, in a claim for negligent misrepresentation, "it is immaterial whether or not such misrepresentation was made innocently or deliberately or with a fraudulent or dishonest intent." *Id.*  Therefore, contrary to Clariant's suggestion, the allegations in the Cross-Claim are not a basis for a claim of "fraud on the court," but a tort claim against a business client.  Furthermore, the affirmative defense of litigation privilege can be waived if it is not pleaded.  *Johnson v. Wichita Falls Housing Authority*, No. 2-06-416 CV, 2007 WL 4126475, *2 (Tex. App.--Fort

---

[7] This Court observes that in *Hideca* the court noted that "the trend is to dispense altogether with privity requirements in negligence suits," and it is reflected in Section 552 of the *Restatement (Second) of Torts*.  740 S.W. 2d at 846-47, *citing Slusser*, 574 S.W. 2d at 830, 832, for holding that "a party supplying false information in the course of business for the guidance of others in their business transactions is liable for negligent misrepresentation, and that the supplier of information owes a duty to exercise reasonable care and competence in obtaining or communicating correct information."  See *also Stephens v. Gilpin*, No. A14-89-00739-CV, 1990 WL 119531, *2 (Tex. App.--Houston [14th Dist.] Aug. 16, 1990)(citing *Slusser* and holding that "a duty to exercise reasonable care extends to anyone who, in the course of their employment, supplies information that could affect the pecuniary interests of others.").

Worth Nov. 21, 2007, no pet.).  It is well established that the possibility of an affirmative defense does not make a pleading subject to dismissal for failure to state a claim.  *Herron v. Herron*, 255 F.2d 589 (5th Cir. 1958).  Additionally, argue the Banks, the litigation privilege cannot support a Rule 12(b)(6) dismissal here because the Cross-Claim does not allege that the misrepresentations were made in a hearing before the Magistrate Judge.  #149 at 17, ¶ 79.  Only Clariant's motion to dismiss makes such an assertion, but the Banks insist their Cross-Claim controls the issue and states a claim for negligent misrepresentation.

With respect to the Banks' claim for equitable relief, the Banks maintain that this Court could grant relief on the theories of restitution and unjust enrichment.  They contend that Clariant was unjustly enriched at the Banks' expense when Clariant's cargo was held on the vessel, to the Banks' detriment, for an unconscionable amount of time.

Last of all, the Banks allege a Cross-Claim for damages in excess of the *custodia legis* expense, so the award of *custodia legis* does not fully compensate them or shield Clariant from liability.  #149 at 16, ¶ 76.  Furthermore, in addition to reimbursement of actual costs, the Banks seek damages for the reduced sale value of the vessel.

## Clariant's Reply (#157)

Insisting that the facts alleged by the Banks "bear no

resemblance to the truth,"[8] Clariant insists that the Cross-Claim is based on conclusory allegations and unwarranted deductions of fact and "smacks of bad faith."  Arguing that the Court knows from proceedings before it (when these hearings actually occurred before the Magistrate Judge, not the undersigned judge), Clariant states that the Court is aware that no mechanism was proposed that would have allowed it to "accept" the cargo in Houston even if it had a duty to do so, that Clariant does not operate a discharge facility in Houston, and that the Port of Houston did not have the capability to discharge the liquid cargo, the reason why the Banks ultimately took it to Louisiana.[9]  Clariant emphasizes that it met all the deadlines applicable to discharge.

Alternatively, referencing emails attached to its motion, Clariant urges the Court to treat the motion to dismiss as one for summary judgment.  The Court, however, agrees with the Banks that they are entitled to more time for discovery.  The parties can move for summary judgment down the road.

Clariant also argues that the law of the case doctrine does not bar this Court from reviewing the Magistrate Judge's discharge order; this Court agrees, but at the moment there is no pending

---

[8] The Court notes that such a determination is beyond the scope of Rule 12(b)(6) review.

[9] Again, there is no evidence for these allegations, and much of what is before the Court is two sets of contrary allegations, the proverbial "he said, she said."

motion requesting such, and the Banks must have an opportunity to respond. Clariant reiterates that it has no legal duty to discharge the cargo and contends the Magistrate Judge's order[10] is erroneous to the extent it concluded otherwise. It further contends that the Banks have not pleaded facts to establish that they had the right to possess the M/V FASE and that Clariant deprived them of that right for a substantial period of time because Clariant continues to insist that the Banks had no right to possess the chattel and that the alleged trespass occurred when the vessel was arrested. Clariant argues that the Banks' reliance on *Great American Ins. Co. v. Nicholas,* citing the *Restatement (Second) of Torts* § 216, is misplaced because it construes New Jersey, not Texas trespass-to-chattel law.[11]

---

[10] After finding that the benefit of the cargo after discharge will go only to Clariant, which should therefore be responsible for all transportation, storage and disposal costs that are not *custodia legis* expenses, Judge Stacy stated, "[W]hile Clariant argues that it should not have to bear the burden of arranging for the discharge of the Cargo, none of the other parties who have appeared in the case have any connection whatsoever to the Cargo, and it is only Clariant that may pursue a tort claim for damage to the Cargo." #101 at 2.

[11] Section 216 defines "possession of chattel": "a person who is in possession of a chattel' is one who has physical control of the chattel with the intent to exercise such control on his own behalf or on behalf of another." Comments c and d are applicable to the instant action:

c. Cases arise in which one who has been in possession of a chattel temporarily relinquishes physical control of it, without abandoning the chattel. In such a case, so long as no other person has obtained possession by acquiring physical control over the chattel with the

Clariant reiterates that the negligent misrepresentation

> intention of exercising such control on his own behalf,
> or on behalf of another, the law protects the property
> interest by attributing the possession to the original
> possessor. . . .
> d.   Situations may also arise in which one person,
> without having the actual physical control of the
> chattel, has the right to immediate physical control of
> it as against all others.  In such a case, so long as the
> possession of the chattel has not been acquired by any
> other person, the law protects the property interest by
> attributing possession to the one who thus has the right
> to it.  Likewise, even where another has physical control
> of the chattel, the person with the right to it will be
> treated as in possession, if the person with actual
> physical control or custody does not have the intent
> stated in this Section.

Although Clariant objects to citation to *Nicolas* on the
grounds that it construes New Jersey trespass to chattel law and
has no application here, the *Restatement (Second) of Torts* § 216 is
not so limited.  Section 216, distinguishing between possession and
control, was cited in *Yarbrough v. John Deere Indus. Equipment Co.*,
526 S.W. 2d 188, 191 (Tex. Civ. App.--Dallas 1975), when the court
wrote,

> The testimony was sufficient for the judge to conclude
> that Yarbrough had possession of the property in the
> sense of actual control, although it may have been
> physically in Murchison's custody.   A person is in
> possession of a chattel if he has control of it and
> intent to exercise such control. *Restatement (Second) of
> Torts* § 216 (1965). . . . The possessor need not have
> immediate physical control if someone else is exercising
> that control on his behalf.  *Restatement (Second) of
> Torts* § 216, comment D (1965); *National Fire Insurance
> Co. v. Davis*, 179 S.W. 2d 316, 318 (Tex. Civ.
> App.-Eastland 1944, writ ref'd w.o.m.).

Clariant further objects that *Nicolas* is not factually or
legally appositive and does not stand for the proposition claimed
by the Banks.  The Court agrees the facts are different, but the
principle as applied to a cause of action for trespass to chattel
is the same:  "One who has a property interest in a chattel is in
possession of it even if he is not exercising physical control over
it at the time of trespass." *Nicolas*, 1989 WL 125350, *3, citing
*Restatement (Second) of Torts*, § 216, comment c.

Cross-Claims must be dismissed because the Banks cannot prove reasonable reliance upon the misrepresentations they have alleged because they occurred in an adversarial context. *Ortiz v. Collins*, 203 S.W. 3d 414, 421-22 (Tex. App.--Houston [14[th] Dist.] 2006)(and cases cited therein)("[A]s a matter of law, reliance on any alleged misrepresentation is unjustified in this case because all representations were made in an adversarial context. Generally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context, such as litigation."); *Swank v. Sverdlin*, 121 S.W. 3d 785, 803 (Tex. App.--Houston [1[st] Dist.] 2003, pet. denied)("Reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context".).[12]    The alleged

_____

[12] The Court notes a gradual expansion of the rule that a party cannot justifiably rely on representations made in an adversarial context.  Initially the *McCamish* court limited the negation of a third party's reliance on a representation to statements by opposing attorneys in litigation.  991 S.W. 2d at 794 ("Generally courts acknowledge that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context.").  In *Coastal Bank SSB v. Chase Bank of Texas, N.A.*, 135 S.W. 3d 840, 843 (Tex. App.--Houston [1[st] Dist.] 2004, no pet.), the First Court of Appeals addressed an alleged negligent misrepresentation that occurred between two sophisticated financial institutions, represented by counsel, that had entered into an agreement to lend cash to a mortgage company, but that included a clause requiring that the plaintiff conduct "an independent investigation and analysis relating to the transaction and not rely on the other institution's analysis.  The plaintiff failed to make the appropriate inquiry, and after losing a substantial sum of money on the transaction, sued the other institution for fraud and negligent misrepresentation.  In deciding

misrepresentations were made during the sale process, which occurred months after this litigation was filed, so the Cross-Claim fails.

Clariant also argues that the Banks have not pleaded claims for restitution or unjust enrichment, but even if they had, those claims would fail as a matter of law because they have not pled the factual basis for such.  Clariant maintains that it could not have been unjustly enriched since the cargo contamination and discharge problems hurt it more than any other claimant.

Clariant also contends that the Banks have no legal basis for recovering *custodia legis* expenses already repaid to them, including custodial fees.  They have not pled the harm of supposed reduced sale price of the vessel nor established what that reduction was.  The Banks alone were the only prospective buyers.

### Banks' Sur-Reply (#159)

The Banks quote their Cross-Claim to show they have adequately pleaded that Clariant "unjustifiably forced all parties to this litigation to suffer unnecessary and costly delay by failing to agree to allow the Vessel to be sold and Clariant's cargo discharged to Clariant in New Orleans."  #159 at 3.  They argue

---

whether the reliance here was justifiable, the appellate court examined the nature of the relationship and the contract entered into between them.  It held that "[a] party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party."  135 S.W. 3d at 843.

that the problem of finding a way to discharge the cargo in Houston "was a problem created by Clariant's own earlier intransigence." #159 at 3.

## Court's Decision

Having carefully reviewed the parties' submissions and the applicable law, the Court concludes that Clariant's motion to dismiss should be denied.

The Court finds that the Banks have adequately pleaded a plausible claim for tortious interference with contract with their mortgage lien on the vessel through a number of alleged delaying acts by Clariant.  There are genuine issues of material fact about Clariant's intent.  The Banks have not provided evidence, as would be required at the summary judgment stage, of their default judgments against the *in personam* Defendants and the resulting lien and have only stated that they are still owed $30,751,571,91 on the debt which the vessel secured.  Neither side has cited any apposite precedent addressing competing and conflicting interests in vessel and cargo that applies to this situation.

The Banks have also stated a plausible claim for trespass to chattels, though again there are genuine issues of material fact as to whether Clariant's alleged "interference" was wrongful or whether it acted in good faith and diligence to arrange for the discharge, and whether it denied the Banks the use of the vessel for a "substantial period of time."

-37-

The Cross-Claim for negligent misrepresentation against Clariant, based on two alleged misrepresentations regarding the time of the contamination of the cargo and whether Clariant could or should have discharged the cargo sooner, fails as a matter of law because the Banks cannot show justifiable reliance **if the misrepresentations were made by counsel** for Clariant during this litigation, *Valls*, 2010 WL 2195446, at *7-8. The Cross-Claim does not specify who made the representations, and the Banks now argue they are suing not the lawyer, but the party, Clariant, for these statements, presumably then made through a corporate representative or agent in the course of a business transaction in which it had a pecuniary interest for the guidance of the Banks in their business. If so, who it was that made the representations must be clarified. Also unclear is whether the challenged statements were made in a hearing or pleadings before Magistrate Judge Stacy or this Court.[13]

Clariant also argues that the negligent misrepresentation Cross-Claims must be dismissed because the Banks cannot prove reasonable reliance upon the misrepresentations because they occurred in an adversarial context. *Ortiz,* 203 S.W. 3d at 421-22; *Swank v. Sverdlin*, 121 S.W. 3d at 803. This Court concludes,

---

[13] If the negligent misrepresentation claim is not barred, questions of material fact exist as to whether the information was false, whether Clariant failed to exercise reasonable care or competence in obtaining or communicating the information, and whether the Banks justifiably relied on the misrepresentations.

however, that Clariant has expanded this rule beyond its application in those cases in applying it here and that something more than an adversarial business or commercial context is required to negate justifiable reliance on an alleged misrepresentation. The Court acknowledges that there has been an expansion of the rule that a party cannot justifiably rely on representations made in an adversarial context, but not as broadly as Clariant argues.

Initially the *McCamish* court limited the negation of a third party's justifiable reliance on a representation to statements by opposing attorneys in litigation.  991 S.W. 2d at 794 ("Generally courts acknowledge that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context.").

In *Swank*, 121 S.W. 3d at 803, as in other subsequent cases, there is more involved than just an adversarial commercial context. In that case, Anatoly Sverdlin was the founder, sole owner, and chief executive officer of Automated Marine Propulsion Systems, Inc. ("AMPS"), which mainly repaired diesel marine engines on large ships.  Sverdlin developed a series of three patents for a new fluid control injections system ("FCIS") employed by AMPS.  In 1995 AMPS began losing money, and Sverdlin hired James McCoy and Mark Swank to develop a business plan to attract investors.  McCoy introduced Sverdlin to an investor, Marvin Chudnoff, who recruited other potential investors.  During negotiations for AMPS to obtain

a million dollar loan to continue development and marketing of
FCIS, Chudnoff frequently spoke on behalf of investors while Swank
often spoke on behalf of AMPS; both were represented by counsel.
A letter agreement was signed on June 6, 1996. Sverdlin signed it
without reading it and later complained that its terms were not
what he had expected. Negotiations on the agreement continued and
a second letter agreement was signed at the end of September, which
Sverdlin also did not read prior to signing. Under the loan
agreement reached, the lender LDE had the right to choose two of
AMPS' three directors, and it named Chudnoff and another investor.
Soon FCIS did not function as predicted, AMPS lost money, and the
parties began to fight over control of the company. Ultimately
Swank and McCoy exercised their stock options, the AMPS board
terminated Sverdlin because his conduct was damaging the company,
and AMPS continued to lose money. AMPS and the LDE obtained a
temporary restraining order enjoining Sverdlin from physically
threatening AMPS' officers and employees, contacting customers to
disparage the company, entering the company's premises and
disrupting activities, taking its equipment, technology and
customer lists, and terminating its directors and employees.
Sverdlin filed a counterclaim individually and on behalf of AMPS in
his derivative capacity, alleging multiple causes of action. He
also sued the law firm representing the investors and AMPS, but
they settled for a confidential amount. The jury found for

Sverdlin and AMPS and awarded them approximately $1.5 billion, but a amount was reduced later by remittitur.   On appeal, the First Court of Appeals overturned the trial court's judgment for insufficient evidence.   For purposes of the issue before this Court, justifiable reliance, Sverdlin argued that the trial court had erred in disregarding the jury's affirmative finding of negligent misrepresentation.   The appeals court concluded that Sverdlin could not recover for negligent misrepresentation based on oral representations by the investors and AMPS' officers that they would not fire Sverdlin, would not take control of AMPS, and would not exercise stock options because these were promises of future conduct, not existing fact.   More to the issue before this Court, the First Court of Appeals concluded that Sverdlin could not have justifiably relied upon these oral representations not only because they were made during adversarial negotiations, but because they were contrary to the terms of the agreements which Sverdlin failed to read and chose to sign anyway.

Subsequently in *Coastal Bank SSB v. Chase Bank of Texas, N.A.*, 135 S.W. 3d 840, 843 (Tex. App.--Houston [1st Dist.] 2004, no pet.), the First Court of Appeals addressed an alleged negligent misrepresentation that occurred between two sophisticated financial institutions, both represented by counsel, that had entered into a written agreement, supported by a confidential memorandum, to lend cash to a mortgage company as part of a bank syndicate, but that

the contract and memorandum included clauses requiring that the plaintiff conduct "an independent investigation and analysis" relating to the transaction and not rely on the other institution's analysis.  The plaintiff failed to make the appropriate inquiry, and after losing a substantial sum of money on the transaction, sued the other institution for fraud and negligent misrepresentation.  In deciding that reliance under those circumstances was not justifiable, the appellate court examined the nature of the relationship and the contract entered into between them.  It held that "[a] party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party."  135 S.W. 3d at 843.  Furthermore, the court opined, "The circumstances surrounding the formation of the contract here and the nature of the disclaimers included in both the confidential memorandum[14] and the contract persuade us that Coastal's reliance on [the Chase

---

[14] In relevant part the confidential memorandum provided that Chase "shall not have any liability for any representations (express or implied) contained in, or for any omissions from this Confidential Memorandum or any other written or oral communications transmitted to the recipient by or on behalf of [Chase] or [the mortgage company] in the course of the recipient's evaluation of the proposed financing."  *Id.* at 845.  It stated, "Each recipient of the information and data contained herein should perform its own independent investigation and analysis of the transaction and the creditworthiness of [the mortgage company].  The information and data contained herein are not a substitute for the recipient's independent evaluation and analysis."  *Id*.

representative's] statement and Chase's silence was not justified." *Id.*

Two years later in *Ortiz*, 203 S.W. 3d at 422, the previous owner of a townhouse challenged the foreclosure sale of it by new purchasers Collins and Welsh, who attempted to gain possession of the house through a forcible detainer.  Collins and Welsh hired an attorney, Twyman, to file such an action.  Ortiz claimed that while that suit was pending, Collins agreed on his and on Welsh's behalf to sell Ortiz the property for $10,000 more than they paid for it at the foreclosure sale and to have a contract prepared to memorialize that agreement.  Ortiz further asserted that Twyman told Ortiz's brother, acting as Ortiz's representative, that Twyman would wait fifteen days to execute on the writ of possession to allow the parties an opportunity to finalize their agreement and that Twyman would execute on the writ of possession only if Ortiz did not perform under the contract.  Ortiz claims that relying on these representations, he did not attend the forcible detainer trial to assert his defenses.  Furthermore Collins never prepared a contract.  Ortiz then prepared one, but neither Collins nor Welsh, who denied there was any oral agreement to sell the townhouse to Ortiz, signed it.  Fifteen days after the trial, Twyman executed the writ of possession and told Ortiz to vacate the property within twenty-four hours.  Ortiz sued Collins and Walsh for fraud, negligent misrepresentation, promissory estoppel, breach

of contract, violation of the Deceptive Trade Practices Act ("DTPA") and conspiracy to defraud and violate the DTPA, and added more later.  The trial court granted summary judgment to Collins and Walsh.  The Fourteenth Court of Appeals examined the question of justifiable reliance by the former owner of a townhouse with respect to his claims for fraud, negligent misrepresentation and promissory estoppel based on the alleged misrepresentations during the negotiation period before the forcible detainer trial and all requiring justifiable reliance.  The panel agreed with Collins and Walsh that as a matter of law there was no justifiable reliance because all representations were made in an adversarial context. 203 S.W. 3d at 422, *citing and quoting Coastal Bank*, 135 S.W. 3d at 843 ("A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party."), and *McCamish*, 991 S.W. 2d at 794 ("Generally, court's have acknowledged that a third party's reliance on an attorney's misrepresentation is not justified when the representation takes place in an adversarial context.").  Ortiz argued that there was a fact issue as to whether the parties' relationship remained adversarial because the parties had settled their dispute.  The panel opined, "Even assuming that the parties entered into an oral agreement to sell Ortiz the property, the mere existence of that agreement did not align all

-44-

parties' interests and remove the adversarial nature of the
relationship, particularly considering that the written details had
yet to be worked out"; it held that the parties' relationship
remained adversarial as a matter of law and any reliance by Ortiz
on statements allegedly made by Collins and Walsh during
negotiations was unjustified and unreasonable. *Id.* at 422.

In the above cases, in addition to an adversarial context,
there was another factor: an express contract whose contrary terms
were ignored by the person claiming justifiable reliance or an
attorney making the misrepresentations, or some kind of appearance
of finality in an agreement. In the instant case, as alleged by
the Banks, as noted it is unclear whether an attorney was involved
in the misrepresentations, there was never any agreement carelessly
reached without some kind of red flag such as earlier
nonperformance or an admonishing contract clause or a failure to
read the agreement that would indicate a need for investigation by
the Banks. The Court concludes that something more than a
commercial and/or adversarial context is required before negation
of justifiable reliance on an alleged misrepresentation. Therefore
the Court will not rule that as a matter of law that the Banks'
reliance was unjustified.

Because the alleged negligent misrepresentations were also
made in the context of the Banks' claims for tortious interference
with contract, Clariant in essence has argued by fact if not by the

verbal term an affirmative defense of legal justification based on its own claimed competing interest in the cargo and its legal right not to have to accept and remove it; Clariant bears the burden of proving that affirmative defense.

Furthermore, if Clariant seeks to challenge the Magistrate Judge's order determining that it is liable for the cargo's the transport, storage, and disposal costs that are not *custodia legis* expenses, it shall file an appropriate motion.

While the Banks have requested equitable relief and their factual allegations suggest that they could seek restitution for unjust enrichment, they have given only vague notice to Clariant and they have not provided specific supporting facts to identify in what amount and how they determined that sum. Allowing supplementation or amendment of the Cross-Claim for this purpose, as well as to clarify who made the alleged negligent misrepresentations, appears to be in the interests of justice; if further discovery is needed beforehand, the Banks should file an appropriate motion.

Last, the Court finds that the Banks have stated a claim for damages for the reduced sale value of the vessel, in excess of the *custodia legis* expenses, but it, too, needs some specific factual support.

Accordingly, for the reasons stated, the Court

ORDERS that Clariant's motion to dismiss the Banks' Cross-

Claim (instrument # 152) is GRANTED as to any alleged misrepresentations made by Clariant's counsel in the course of this litigation; the motion is otherwise DENIED.  The Court further

ORDERS that the Banks shall supplement or amend their Cross-Claim within twenty days (1) to identify the person(s) who made the alleged negligent misrepresentations; (2) to indicate whether they were made in pleadings or in a hearing before the Magistrate Judge or this Court; and (3) to provide factual allegations to support their claim for reduced value of the vessel and their prayer for the equitable remedy of unjust enrichment/restitution.  Clariant may reurge any of its arguments if appropriate based on the new pleadings.

**SIGNED** at Houston, Texas, this 23rd day of July , 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE